642 So.2d 1213 (1994)
STATE of Louisiana
v.
Kevin TOUCHET.
No. 93-KK-2839.
Supreme Court of Louisiana.
September 6, 1994.
Concurring Opinion September 30, 1994.
G. Paul Marx, Lafayette, for applicant.
Richard P. Ieyoub, Atty. Gen., Hon. J. Nathan Stansbury, Dist. Atty., Michael Harson, Asst. Dist. Atty., for respondent.
Marilyn M. Fournet, Baton Rouge, for Louisiana Ass'n Defense Counsel, amicus curiae.
Concurring Opinion of Chief Justice Calogero September 30, 1994.
HALL, Justice.[1]
Writs were granted in this case to consider the issue of whether and to what extent *1214 indigent defendants are entitled to ex parte hearings on their motions for state funding of expert witness services. We affirm in part and modify the holding of the lower court to require that an indigent defendant's request for funding may be filed ex parte and that such request is to be considered in camera by the trial court. The state is to be notified of the ex parte hearing, and, while not to be present or participate initially in the hearing itself, is to be allowed to file an opposition to the motion. The trial court is then to determine, in camera, whether the defendant has made a showing that the proceedings should continue in camera so as to protect the defendant from disclosure of his defense. If the defendant fails to show a need for secrecy, the state is to be allowed to participate in the hearing; if the defendant makes the required showing, then the hearing is to continue in camera. We further hold that, in this hearing, the defendant must show his need for the expert assistance and the amount of funds necessary to secure such assistance. Once this showing is made, the trial court is empowered to order the state to provide the needed funds.

I.
Defendant Kevin Touchet was charged with first-degree murder, a violation of LSA-R.S. 14:30, and the state is seeking the death penalty. Counsel for the defendant filed an in camera motion requesting that, after an ex parte hearing, the state, through the court fund, provide funds for payment of expert assistance for this indigent defendant. Specifically, the defendant requested funds for the payment of experts to examine certain specific evidence gathered by the state, listing the particular experts to be retained and the estimated cost of their services.
The trial court denied the motion for an ex parte hearing, holding that, in the absence of a showing of "particularized prejudice [to the defense] by providing to the District Attorney information which he would not otherwise be entitled to have", an indigent defendant is not entitled to an ex parte hearing on requests for expert funding. The trial court also opined that, since the state would have to pay for the experts' fees, the state (through the District Attorney) should participate in the hearing on the necessity and cost of defense expert assistance. Finally, the trial court ordered the motion sealed pending a ruling on defendant's anticipated writ application.
Defendant next sought review of this ruling in the court of appeal, and the court of appeal denied the defendant's application. Defendant then applied for writs from this court seeking both a reversal of the trial court ruling and some articulation of guidelines for the handling of requests by indigent defendants for funds for payment of the fees of experts. Writs were granted. State v. Touchet, No. 93-2839 (La.3/18/94), 634 So.2d 843 (La.1994).

II.
The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." This provision has been construed to signify that, in a prosecution against an indigent defendant,
justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake.
Ake v. Oklahoma, 470 U.S. 68, 77, 105 S.Ct. 1087, 1092, 84 L.Ed.2d 53 (1985). This belief has led to many decisions by our nation's highest court that require a State, when it "brings its judicial power to bear on an indigent defendant in a criminal proceeding," to "take steps to assure that the [indigent] defendant has a fair opportunity to present his defense." Id.
Just what "steps" the state must take in order to give indigents "an adequate right to present their claims fairly within the adversary system" has been the subject of much litigation. Ross v. Moffit, 417 U.S. 600, 612, 94 S.Ct. 2437, 2444, 41 L.Ed.2d 341 (1974). In order to provide an indigent with the "fair opportunity" to present his defense, the state has been required to provide to the indigent *1215 defendant cost-free assistance of court-appointed trial counsel, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), as well as assistance of court-appointed appellate counsel on his direct appeal as a matter of right, Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). Further, the state is required to ensure that this assistance is effective. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Part of the state's obligation in providing effective assistance of counsel to an indigent defendant is satisfied by its furnishing of the indigent's defense counsel with all of the "basic tools of an adequate defense," at no cost to the indigent defendant. Britt v. North Carolina, 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971). This requirement stemmed from the belief that "[t]here can be no equal justice where the kind of trial a man gets depends upon the amount of money he has." Griffin v. People of the State of Illinois, 351 U.S. 12, 20, 76 S.Ct. 585, 591, 100 L.Ed. 891 (1956).
In Ake v. Oklahoma, supra, the Supreme Court discussed whether or not a psychiatric expert was a "basic tool" for a defendant's case such that the state should provide one to an indigent at public expense. There, the Court examined whether or not such an expert was a part of the "raw materials integral to the building of an effective defense." Ake, 470 U.S. at 78, 105 S.Ct. at 1093. Using the Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), "balancing test", the Court considered the private interest to be affected by the State action or inaction, the governmental interest in the State's action or inaction, the risks of erroneous deprivation of protected liberty interests that are presented by the process, and, finally, the effect of additional safeguards upon this risk of erroneous deprivation. Id. The Court found that the private interest of the accused in having a psychiatric expert to help avoid an erroneous conviction was high due to the threat of imprisonment or, in a capital case, of death. The state interest in preserving its fisc was held to be "tempered" by its shared interest in the accuracy of its judicial proceedings. Finally, the fact that over 40 states and the federal government had provided for the cost-free appointment of such experts implicitly showed that, when the state has made mental condition of the accused relevant to criminal responsibility, the assistance of a psychological expert may well be a "crucial" safeguard to "the defendant's ability to marshal his defense" and, by so doing, ensure an accurate result. Id.
This court has extended this recognition of need to other types of expert assistance "crucial" to an indigent's defense. See, e.g., State v. Craig, No. 93-2515, c/w State v. Harris, No. 93-2589, (La. 5/23/94), 637 So.2d 437 (La.1994), State v. Langlois, 605 So.2d 1155 (La.1992); State v. Carmouche, 527 So.2d 307 (La.1988); and State v. Madison, 345 So.2d 485 (La.1977). In State v. Madison, this court noted that expert investigative assistance might be critical to an indigent's defense. In State v. Carmouche, we ordered the trial court to grant defendant's request for experts in fingerprint analysis and serology. In State v. Craig, we upheld a trial court decision ordering payment for the services of an investigator, a psychologist, and a mitigation expert. In Craig, this court further stated that, after an indigent defendant makes a threshold showing as to need for expert assistance, the assistance should be provided to him at governmental expense. 637 So.2d at 446-447. We now amplify that holding to state that the indigent defendant should establish that the expert assistance will be necessary to the construction of an effective defense.
The United States Supreme Court has refused to hold that an indigent defendant is to be furnished with every "tool" of an effective defense that a wealthier counterpart could afford. In Ross, supra, the Court held that providing cost-free counsel to an indigent for the preparation of discretionary appeals was not the State's responsibility. The Court there stated that "the fact that a particular service might be of benefit to an indigent defendant does not mean that the service is constitutionally required." Ross, 417 U.S. at 617, 94 S.Ct. at 2447. The Court defined the state's duty as not being "to duplicate the legal arsenal that may be privately retained by a criminal defendant ... but only to *1216 assure the indigent defendant an adequate opportunity to present his claims fairly...." Id.
While the United States Supreme Court has never specifically passed on what type of showing is required to entitle a defendant to state-funded expert assistance, it has stated what kinds of showings will not entitle an indigent to this type of state support. In Caldwell v. Mississippi, 472 U.S. 320, 325, n. 1, 105 S.Ct. 2633, 2637, n. 1, 86 L.Ed.2d 231 (1985), the Court refused to require the state to fund a ballistics expert when the defendant had only "offered little more than undeveloped assertions that the requested assistance would be beneficial." Some federal circuit courts have passed upon what showing an indigent defendant must make before the state is required to subsidize expert witnesses. In Williams v. Martin, 618 F.2d 1021, 1026 (4th Cir.1980), the court stated that the defendant must show that his defense "could [not] be fully developed without professional assistance", i.e., that there must be a "substantial question" that "require[s] expert testimony for its explication." The 11th Circuit's decision in Moore v. Kemp, 809 F.2d 702 (11th Cir.1987), antedating both Ake and Caldwell, is of even more assistance.
In Moore, the court, sitting en banc, interpreted Ake and Caldwell to require that a defendant make the showing that "there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial." Id., at 712. The court then required the defendant to inform the court as to the nature of the state's case against him and how an expert might be useful:
At the very least, [the defendant] must inform the trial court about the nature of the crime and the evidence linking him to the crime. By the same token, if the defendant desires the appointment of an expert so that he can present an affirmative defense ... he must demonstrate a substantial basis for the defense ... In each instance, the defendant's showing must also include a specific description of the expert or experts desired; without this basic information, the court would be unable to grant the defendant's motion, because the court would not know what type of expert was needed.
Id. The court based this holding on analogous statutes addressing the issue of state-subsidized subpoenas for indigent defense witnesses. These statutes all require some sort of showing that, before the state is required to pay for the issuance of subpoenas for these witnesses, the witnesses' testimony will be necessary for an adequate defense. Id., citing Fed.R.Crim.P. 17(b).
Louisiana has similar rules regarding the issuance of subpoenas for the indigent defendant. La.C.Cr.P. art. 739 provides that the indigent defendant is required to make a "sworn application ... alleg[ing] that the testimony is relevant and material and not cumulative and that the defendant cannot safely go to trial without it". This application is examined by the court, and, should it be "satisfied that the defendant is entitled to the privilege," the subpoenas are issued at state expense. Given the similarity between Louisiana's statutes on subpoenas for indigent defendants and the statutes forming the basis for the court's opinion in Moore, we find Moore to be both applicable and persuasive, and adopt its approach.
Henceforth, for an indigent defendant to be granted the services of an expert at the expense of the state, he must establish that there exists a reasonable probability both that an expert would be of assistance to the defense and that the denial of expert assistance would result in a fundamentally unfair trial. To meet this standard, a defendant must ordinarily establish, with a reasonable degree of specificity, that the assistance is required to answer a substantial issue or question that is raised by the prosecution's case or to support a critical element of the defense. If the trial court finds that the indigent defendant is able to meet this standard, it is to authorize the hiring of the expert at the expense of the state.
This section of the opinion addresses the showing needed to establish entitlement to funding for experts. We now turn our attention to the issue of whether or not the hearing on indigent expert witness funding in a *1217 criminal trial is to be conducted in an ex parte manner.

III.
As a general proposition, most hearings are to be held in an open, contradictory fashion, with ex parte hearings being disfavored. This is a result of the Due Process guarantee of notice and an opportunity to be heard that is found in both the Fourteenth Amendment to the federal Constitution and in Art. I, § 2 of the Louisiana Constitution of 1974. See Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Mathews v. Eldridge, supra; Wilson v. City of New Orleans, 479 So.2d 891 (La.1985).
Certain legislation has created exceptions to the general rule that all hearings are to be contradictory, especially where proceedings involving indigents are concerned. For example, La.C.C.P. art. 5183(B) allows for ex parte consideration of applications for exemption from court costs due to indigency in civil proceedings. LSA-C.Cr.P. art. 739, previously discussed, allows private inquiry by the court into the facts supporting a defense application for subpoenas of witnesses at government expense. This court has also, mostly in per curiam decisions, approved or required ex parte hearings for applications for funding for experts by indigent criminal defendants. See State v. Langlois, supra (ordering the trial court to make funds available for defense expenses "for the purpose set forth in the in chambers showing made in the trial court"); State v. Benoit, 576 So.2d 41 (La.1991) (per curiam) (granting defendant's request for an ex parte hearing on her application for funds for expert assistance); State v. Larson, 548 So.2d 945 (La. 1989) (per curiam) (reversing a trial court's ruling to unseal the record of an in camera ex parte hearing on defendant's application for funds for expert assistance); State v. Madison, supra, (positing that problems of revealing essential elements of defense case posed by defendant's application for funding for expert assistance could be "avoided in a private hearing before the trial judge"). Still, there is neither any legislation nor any opinions of this court involving indigent applications for state funding for expert witnesses that specifically discuss and answer the question as to whether or not such hearings are to be held ex parte. In the absence of such specific legislation and precedent, it is helpful to examine other jurisdictions' approach to this problem and analogous legislation from this state.
Entitlement to an ex parte proceeding on an indigent's application for funds or services is usually traced to Ake v. Oklahoma, supra. There the U.S. Supreme Court observed that
[t]he risk of error from denial of such assistance, as well as its probable value, is most predictably at its height when the defendant's mental condition is seriously in question. When the defendant is able to make an ex parte threshold showing that his sanity is likely to be a significant factor in his defense, the need for the assistance of a psychiatrist is readily apparent.
470 U.S. at 82-83, 105 S.Ct. at 1096.
In the federal system, the right to an ex parte hearing or funding for experts is statutory. See 18 U.S.C. § 3006A(e)(1). Applications for subpoenas of witnesses at government expense are also considered ex parte. Fed.R.Crim.P. 17(b), as amended in 1966. While Louisiana lacks such specific statutory provisions, federal precedent is illustrative of the purpose and intent behind the adoption of such a rule.
In United States v. Meriwether, 486 F.2d 498, 506 (5th Cir.1973), the court illustrated the purpose of having such applications and the proceedings surrounding them discussed in an ex parte hearing. The court stated that holding the hearings in an ex parte manner would "shield the theory of the [indigent's] defense from the prosecutor's scrutiny." Id. The court believed that the state should not have such an unfair advantage that it would not ordinarily have if the case were against a monied defendant:
The names of witnesses to be called by the defendant could easily aid the government in determining the strategy the defendant plans to use at trial. The government should not be able to obtain a list of adverse witnesses in the case of a defendant unable to pay their fees when it is not able to do so in the cases of defendants able to pay witness fees. When an indigent *1218 defendant's case is subjected to pre-trial scrutiny by the prosecutor, while the monied defendant is able to proceed without such scrutiny, serious equal protection questions are raised, and it appears that a major reason for the amendment was to avoid such questions.
Id. Thus, well-founded fears of unfair prosecutorial advantage have been the impetus behind adoption of such a rule making hearings on indigent expert witness funding ex parte, at least in the federal system.
Other states have echoed this sentiment and allow for some sort of ex parte application and hearing on requests for expert services by indigent defendants. Six states allow for the procedure via legislation, these states being California, Kansas, Minnesota, Nevada, New York, and Tennessee.[2] Nine other states have judicially allowed for ex parte hearings on these requests: Arkansas, Florida, Georgia, Hawaii, Indiana, Michigan, North Carolina, Oklahoma, and Washington.[3] The reasons for this allowance ofex parte hearings on the issue of indigent defense funding stem from similar concerns to those addressed in Meriwether, supra, and were well summarized by the court in People v. Loyer, supra. The court feared that opening the hearings would
potentially expos[e] defendant's defense to prosecutorial review when a monied defendant's defense would remain inviolate. Clearly, the pretrial revelation of the names, number, and expected testimony of a defendant's witnesses might be of significant tactical advantage to the prosecution. First, as noted by defendant, "it is simply a reflection of the truth known by every litigator: the more known of the opposing side's case, the better." Second, such disclosure could lead the prosecution to emphasize certain evidence in anticipation of damaging impeachment evidence to be presented by defendant. Third, it could lead the prosecution to de-emphasize, or to omit, certain evidence in anticipation of damaging impeachment evidence to be presented by defendant. Moreover, it could help the prosecution during voir dire and in structuring its opening statement. Indeed, if the theory of the defendant's defense is revealed prior to trial, it seems likely that the prosecution could fashion its strategy as to best discredit and undermine that revealed defense. When such an advantage is to be reaped by the prosecution only when the defendant is poor and therefore cannot afford to pay the service-of-process and witness fees of his witnesses, it seems undeniable to us that such a defendant is not the recipient of equal justice under law.
425 N.W.2d at 722. This decision is illustrative of the Fifth Amendment-based principle that the defendant has a right to compel the State to investigate its own case, find its own witnesses, prove its own facts, and convince the jury through its own resources. This right prevents the indigent defendant from having to choose between the "Scylla" of disclosing theories of his defense as a result of non-private applications for funds, and the "Charybdis of keeping the defense secret [at the cost of] foregoing the necessary monies" to mount the defense. People v. Anderson, 43 Cal.3d 1104, 240 Cal.Rptr. 585, 742 P.2d 1306, 1320-22 (1987).
In Louisiana, the Code of Criminal Procedure recognizes that the onus of any criminal prosecution is upon the state, and that the state is not to receive any unfair advantages in the pretrial discovery process. La.C.Cr.P. arts. 724 and 725 provide for state discovery only of defense scientific or medical reports, and only after the defense has "opened the door" by its request for similar information in the possession of the state. La.C.Cr.P. art. 728 specifically forbids discovery of elements *1219 of anything but scientific and medical reports that were, in turn, first requested by the defense, and protects "statements made by ... witnesses or prospective witnesses [and] the names of defense witnesses or prospective defense witnesses" from discovery by the state. These provisions of the Code reflect a legislative recognition that the state should "shoulder the entire load" in a criminal prosecution and should not be allowed to circumvent the "burdens of independent investigation by compelling self-incriminating disclosures." Murphy v. Waterfront Commission of New York, 378 U.S. 52, 55, 84 S.Ct. 1594, 1597, 12 L.Ed.2d 678 (1964).
All of this precedent and legislation also reflect a desire to protect the rights of an accused to mount an effective defense without regard to his or her financial status, but this right is not without some limit. Ross, supra; Craig, supra. An example of a provision that guarantees this right (but with reasonable limitation) can be found in La. C.Cr.P. art. 739, and is of particular relevance in this case involving requests for indigent defense witness funding. It provides that, when an indigent requests governmental funding for the subpoena of additional material witnesses, he is to make a sworn application to the court attesting to the relevancy and need for these additional witnesses. After this application, the court is to "make a private inquiry into the facts," and satisfy itself that the defendant does indeed need these relevant witnesses for an effective defense. (Emphasis added.) Only if the application is denied does it become part of the record, i.e., available for inspection by the state. There is no provision for the written reasons for denial to remain under seal or, for that matter, are there any protections due the indigent defendant once the trial court refuses to approve the ex parte funding request of the indigent defendant.
Article 739 was inspired by the pre-1966 Fed.R.Crim.P. 17(b), except that it omitted the requirement that the defendant state what he intended to prove, reflecting a legislative concern that "the defendant should not be forced to disclose his defense prior to trial." La.C.Crim.P. art. 739, comment (c). Instead of requiring the defense to disclose its trial strategy in order to obtain additional witnesses, the trial court is allowed to "require the defendant to state privately what he expects to prove." Id. (Emphasis added.) Only if the application is denied does any element of the defendant's request leave the confines of the trial judge's chambers, and then only for the purpose of creating some basis for appellate review. State v. Phillips, 343 So.2d 1047, 1052 (La.1977).
The concerns behind the enactment of this statute that shields the reason the proposed testimony of a material witness is needed for an indigent defendant are the same as those behind any rule crafted by this court to shield the reason for the need of defense experts from the state. The harm to the indigent defendant is the samepremature disclosure of the defendant's case and a corresponding unfair advantage for the state in its prosecution. This will frustrate one of the principal foundations of our criminal justice systemthat the state must carry its burden of proof of every element of guilt through its own resources, and not as a result of efforts of the defendant to obtain the means to exculpate himself.
This discussion demonstrates that there is no reason why applications for governmental funding to secure the appearance of expert witnesses should be treated any more harshly than applications for governmental funding for the securing of the appearance of material witnesses. Thus, we conclude that an indigent defendant seeking governmental funding for the assistance of expert witnesses is entitled to make an initial ex parte application with the trial court. This is not to say, however, that the hearings on such applications will necessarily be conducted throughout to a completion in an ex parte manner.
Other jurisdictions have refused to hold that indigent defendants are automatically entitled to ex parte treatment of their applications for government funding of defense expert witnesses. The Supreme Court of North Carolina has held that decisions whether or not to hold ex parte hearings on government funding for expert assistance to indigent defense are within the discretion of the trial court, and can only be reversed *1220 after the indigent makes a showing of prejudice due to the premature disclosure of defense strategy. See State v. Phipps, 331 N.C. 427, 418 S.E.2d 178, 191 (1992). Thus, in the absence of some showing of prejudice, an indigent defendant is not entitled to such an ex parte hearing on government funding for expert assistance.
The trial court in this case refused to hold such a funding hearing in an ex parte fashion without a showing of "particularized prejudice" to the defendant from holding the hearing in a contradictory fashion. This is almost identical to the North Carolina approach, which effectively leaves the decision to deviate from the normal contradictory hearing to the trial court, which may deviate from the norm only in the presence of prejudice to the defendant. This approach, which we adopt, recognizes that ex parte treatment is not the rule, but rather the exception, and that, in order to deviate from the general rule of open and contradictory hearings, there must be a showing of good cause. Henceforth, although the initial application for funding for expert services will be considered ex parte, unless the defendant demonstrates some particularized prejudice to him by state participation in the hearing, the hearing on the funding will be conducted in a contradictory manner. This is not an especially harsh result, as a defendant need only make a showing that certain essential and potentially meritorious elements of his defense will be disclosed to the state if there is a contradictory hearing on the request for funds, and that these elements are not obvious to the state.
Such a requirement is not alien to this state's jurisprudence. In Phillips, supra, this court was faced with a claim that it was prejudicial error for a trial court to have erroneously filed a transcript of a request by an indigent for funding to obtain the appearance of material witnesses in a record accessible by the state. In refusing to hold that there was prejudice present in Phillips, this court properly realized that not every revelation of elements of a defense case would be a cause for concern of unfair treatment for indigents. 343 So.2d at 1052. There, the court was presented with non-prejudicial error, as this was one of those cases where "the substance of the defense was well-known to the state, and the particulars disclosed at the hearing would not contribute to that defense." 343 So.2d at 1052.
Thus, if revelations of the reasons for subpoenaing material witnesses are not per se prejudicial, it is difficult to hold that revelations of the reasons for needing experts are per se prejudicial, and we refuse to do so. Instead, we hold that, if the case is one where, in the trial court's discretion, "particulars disclosed in the [application] would not contribute to the defense", or when the defense is "well-known" to the state, the state may be allowed to participate in the hearing. Alternatively, in the discretion of the trial court, the state may be allowed to participate in only certain issues that the court feels are appropriate for contradictory hearing, while barring the state from participation in other issues where disclosure would be prejudicial.
If the court finds that opening the hearing to the state will not prejudice the defendant in any substantial manner, the trial court shall supply written or transcribed reasons for this decision in order to preserve the reasons for the decision for appellate review, as would be the case in a denial of a defense request for funding to secure material witnesses under La.C.Cr.P. art. 739. In the event that the court decides that an ex parte hearing is proper, it shall supply written or transcribed reasons why it feels that an ex parte hearing is necessary, so as to provide some record for appellate review of this decision, as well. During the review of this interlocutory ruling, the application for funding and the trial court reasons for its denial or granting of an ex parte hearing shall both remain under seal so as to protect the defendant's case in the event of a favorable ruling. Brooks v. State, supra, at 84.
Regardless of a trial court finding that the state may or may not participate in the subsequent hearing on funding for expert assistance, the state is entitled to notice and the right to file an opposition to the request for funding. While the trial court is an adequate guardian of the state's financial interests from frivolous requests for funding, the state's substantial interest in protecting its *1221 fisc does mitigate in favor of its being allowed notice and some ability to dispute requests that may needlessly drain its resources. People v. Loyer, supra. Notice to the state and a corresponding right of the state to file an opposition, while helping to protect that important governmental interest, does not threaten the defendant in the least, as the state will not be present during the application process and, if the trial court so orders, will not be present during the ex parte hearing.
Further, the discretion given to the trial court in its decisions on the funding of expert assistance for indigent defendants requires that some form of opposition by the state be allowed. Even though filed without access to the defendant's motion or evidence, the state may in some instances be able to bring to a trial court's or a reviewing court's attention information which will assist in the determinations to be made.
In this case, as the trial court required that the defendant show some particularized prejudice to his case created by a contradictory hearing on the request for funds for expert assistance, the correct standard was enunciated, and the ruling of the trial court in this regard is affirmed. As no ruling was made on the merits of the appropriateness of ex parte consideration of the hearing on this defendant's request for expert assistance, this case is to be remanded to the trial court for proceedings reflecting the standards set forth above.
After the trial court determines whether or not this proceeding is to be held ex parte, the trial court is then to consider the request itself in accord with the standards set forth in section II of this opinion, which requires that defendant show that it is more likely than not that the requested expert assistance will be required to answer a serious issue or question raised by either the prosecution's or the defense's case. If the defendant makes this showing, then the trial court is to order that the funds be provided by the state.

IV.
To recapitulate our holding in this case, an indigent defendant may file a motion for expert funding ex parte. Notice of the filing of the motion should be given to the state, which may file an opposition to the hearing being held ex parte and/or to the request for funding. The trial court should first determine, in camera, either on the face of the allegations of the motion or upon taking evidence at an ex parte hearing, whether the defendant would be prejudiced by a disclosure of his defense at a contradictory hearing. If so, then the hearing on expert funding should continue ex parte. If not, then the hearing should be held contradictorily with the District Attorney. If either side seeks appellate review of a ruling as to the ex parte nature of the hearing, the motion and other proceedings to this point should remain under seal until the appellate review is completed, and thereafter if the ruling is in favor of an ex parte hearing.
At the hearing on expert funding, whether ex parte or contradictory, the defendant must first show a need for the funding. The defendant must show with a reasonable degree of specificity what type of expert is needed and for what purpose. In other words, the indigent defendant requesting governmental funding for the securing of expert assistance must show that it is more likely than not that the expert assistance will be required to answer a serious issue or question raised by the prosecution's or defense's theory of the case. If the defendant meets this burden, then the court is to order that the funds be provided by the state.[4] If the defendant fails to meet this *1222 burden, and the proceedings were held ex parte, both the written reasons for denial and the record of the proceedings are to remain under seal during the pendency of the defendant's prosecution, including appellate review.
The trial court in this case made the proper ruling on the standard for whether or not a hearing on funding for such expert assistance is to be held ex parte; however, the trial court has not yet made a ruling applying this standard to the facts of this case. The trial court also has not yet ruled upon whether or not the defendant/applicant made the requisite showing as to his need for these services. In light of the absence of and need for such rulings, we therefore remand this case back to the trial court for rulings on the above matters in a fashion consistent with this opinion.
AFFIRMED AS MODIFIED, AND REMANDED.
CALOGERO, C.J., concurs and will assign reasons.
ORTIQUE, J., dissents with reasons.
ORTIQUE, Justice, dissenting.
In this case wherein the defendant asks this court to annunciate guidelines for handling requests of indigent defendants for funds for payment of expert witness fees, the state has declared but one objection to defendant's request, based upon its contention that such requests may lead to financial abuse. Thus, the state asserts that indigent defendants are not entitled to expert witnesses of their choice and that courts should limit the amount of money experts can demand. The state had no objection to ex parte applications for such funds. The majority purports to establish guidelines which are not violative of the constitutional rights of indigent defendants for the handling of requests for expert fees and orders issued in such proceedings. Additionally, the majority purports to set forth guidelines which are consistent with constitutional requirements by which a governing authority ordered to pay such fees may contest the necessity for such services and/or the cost of such services. In my view, the majority establishes guidelines and procedures that do not pass constitutional muster.
FUNDAMENTAL DUE PROCESS AND THE EX PARTE REQUIREMENT:
It is undisputed that an indigent defendant is entitled to meaningful access to justice. Meaningful access has been held to include the right to appointed counsel, Gideon v. *1223 Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the right to free trial transcripts on a first appeal, Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) and the right to file a notice of appeal without first paying a filing fee, Burns v. Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959). Meaningful access has also been held to include a right to court appointed counsel on a first direct appeal as of right, Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) and effective assistance of counsel, Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).
This court held in State v. Madison, 345 So.2d 485 (La.1977), that furnishing counsel to an indigent defendant is not enough if counsel cannot secure information on which to construct a defense.[1]See also State v. Trahan, 481 So.2d 729 (La.Ct.App. 1st Cir. 1985). Fundamental fairness entitles an indigent defendant an adequate opportunity to fairly present a defense in our adversarial system of justice. Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). And most emphatically, this court has unequivocally declared that "[t]he kind of trial a man gets cannot be made to depend on the amount of money he has." State v. Madison, supra, at 490.
In Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the U.S. Supreme Court decided the issue of whether an indigent defendant is entitled to the assistance of a psychiatric expert in the preparation of a defense. In deciding this issue, the Court established the right of an indigent defendant to the assistance of such experts at public expense, based upon the due process requirements of the Fourteenth Amendment to the U.S. Constitution. These due process requirements guarantee fundamental fairness and equal justice which preclude the denial of due process based upon an indigent's inability to pay for his or her defense.[2]
The analysis applied by the Court in Ake, assessed the following factors: 1) the private interest that will be affected by the action of the State, 2) the governmental interest that will be affected if a safeguard, such as expert assistance must be provided and 3) the probable value of additional or substitute safeguards sought and the risk of an erroneous deprivation of the affected interest if safeguards are not provided. The Court concluded that the private interest in the accuracy of the proceedings which place one's life or liberty at risk is a compelling interest the interest in avoiding an erroneous conviction, obviously. The governmental interest involved, the Court found, may manifest itself in contentions that the financial burden of providing expert assistance to indigent defendants at public expense is too great. One must observe however, that the federal government as well as many states have made such assistance available statutorily. Although the state may have an interest in maintaining a strategic advantage over a defendant, it is not compelling, if the result would be an inaccurate verdict. Therefore, the Court found that the state's interest in strategic advantage it is not a substantial interest. The U.S. Congress has provided, according to the Court in Ake, that all experts necessary for an adequate defense be provided, and reimbursement of expert fees is guaranteed. Even those states that have not guaranteed the right by statute, have interpreted both the federal and state constitutions to require psychiatric assistance. This analysis, which is applicable to proceedings wherein guilt is determined, also applies in capital sentencing proceedings.
Meaningful access to justice also includes a defendant's right to protect his or her defense from review by the state until the time of trial. This right includes the right not to *1224 compromise his or her privilege against self-incrimination. See U.S. v. Sutton, 464 F.2d 552 (5th Cir.1972); Marshall v. U.S., 423 F.2d 1315 (10th Cir.1970). This concept is fundamental under both the U.S. and the Louisiana Constitutions and is true without regard to a defendant's financial condition.
Louisiana jurisprudence has until this time, consistently held that the defendant's case is protected from review by the state until the time of trial. More than a half century ago, this court declared in State v. Monroe, 205 La. 285, 17 So.2d 331 (1944) that "[i]n a criminal prosecution the state does not and can not know what the defense to the charge will be until it is presented on the trial of the case ...," and reaffirmed that declaration in State v. Williams, 445 So.2d 1171 (La.1984). The majority opinion is clearly contrary to these time honored principles of justice.
Our jurisprudence provides safeguards protecting a defendant's case from the prosecution's cognizance by, under certain circumstances, prohibiting pre-trial discovery available to the state, and in other circumstances, by limiting discovery available to the state. In State v. Rachal, 362 So.2d 737 (La.1978), we held that the Fifth and Fourteenth Amendments to the U.S. Constitution barred the state from securing by subpoena the defense psychologist's test data and results for evaluation by the state's psychiatrist, prior to issuance of a proper subpoena, until that psychologist testified and introduced the data and results in evidence. We reached this conclusion despite a statutory provision which requires a subpoenaed person to respond directly to a district attorney. See La.Code Crim.Proc. art. 66. Where a defendant enters a plea of not guilty by reason of insanity and thereby waives his Fifth Amendment rights to a limited degree, the state is not entitled to unilateral discovery of reports of the defendant's physical and mental examinations. State v. Heath, 427 So.2d 496 (La.Ct.App. 1st Cir.1983). Where a defendant invokes discovery provisions of the Code of Criminal Procedure, the reciprocal discovery rights given the state are limited. State v. Graham, 422 So.2d 123 (La.1982), citing La.Code Crim.Proc. art. 724.
The majority's conclusion that a defendant must make a showing that proceedings pertaining to requests for expert fees need not be held ex parte or in camera to protect an indigent defendant from premature disclosure of his or her defense, without suggesting how such a showing may be made without creating judicial bias, is preposterous. See N.Y. County Law § 722-c (McKinney 1992). The bias that is likely to arise when the same judge who will try a case hears motions for expert assistance is indirectly acknowledged by the majorityi.e., by opining that "the indigent defendant should establish that the expert assistance will be necessary to the construction of an effective defense." (emphasis added). The majority's conclusion in this regard, requires the judge hearing such requests to conclude prior to trial on the merits whether the defendant's defense is likely to prevail. Neither the U.S. Constitution nor the Louisiana Constitution impose upon a defendant the obligation to assert an "effective defense." Both of these laudable documents, the foundations of justice in our America, give defendants an unfettered right to a meaningful defense.
The majority's declaration, in my view, is in conflict with the very jurisprudence they rely upon. See Ross v. Moffit, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). Louisiana's due process requirements are as stringent as the U.S. Constitution's and must be scrupulously observed. The defense to which a defendant is entitled includes a fair and unbiased consideration thereof. The judge determining defendant's need for expert assistance and the reasonableness of his or her request cannot be influenced by the likelihood of success of the defendant's planned defense. An accused has a constitutional right to present a defense. Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); La. Const. Art. I, § 16 (1974). Because jurists are subject to predilections as are all rational finite individuals, there must be some form of safeguard against a judge concluding in his or her own mind, in a need determination proceeding, that a defendant's planned defense is meritless. That judge may later allow that conclusion to influence his or her conduct of the *1225 trial. In my view, need determinations best serve the constitutionally mandated purposes of fundamental fairness and equal justice when ex parte proceedings on an indigent defendant's request for funds for expert assistance are heard by judge who is not designated to try the case. Thus, likelihood of success cannot be a factor for consideration by the judge hearing a defendant's request for expert services, when trying the case on the merits.
MONEY OR THE LACK THEREOF MUST NOT SUBVERT JUSTICE
An indigent defendant must be placed as nearly as may be possible on a level of equality with a non-indigent defendant who must defend against criminal charges. U.S. v. Tate, 419 F.2d 131 (6th Cir.1969); U.S. v. Theriault, 440 F.2d 713 (5th Cir.1971) (Wisdom, J., concurring); U.S. v. Meriweather, 486 F.2d 498 (5th Cir.1973); State v. Hamilton, 448 So.2d 1007 (Fla.1984). See also State v. Madison, supra. A monied defendant is not required to prematurely disclose his or her defense to the prosecution, therefore, an indigent defendant should not be required to do so. There can be no equal justice where the kind of trial a man gets depends on the amount of money he has. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); State v. Madison, supra.
Ake requires that an indigent defendant make a threshold showing of need for expert assistance. The assertions made must be reasonable and sufficiently supported in order to establish the necessity of the requested services. See Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) (defense counsel's undeveloped assertions found insufficient to establish a valid claim for psychiatric assistance); U.S. v. Williams, 998 F.2d 258 (5th Cir.1993) (the bare allegation that defendant had seen a psychiatrist and had taken psychotropic medication was insufficient to establish need for psychiatric assistance); Williams v. Collins, 989 F.2d 841 (5th Cir.1993) (bare assertion that defendant was insane at time of the offense and non-specific statements of mental problems were insufficient to make the threshold showing required); Volanty v. Lynaugh, 874 F.2d 243 (5th Cir.1989), cert. denied, 493 U.S. 955, 110 S.Ct. 369, 107 L.Ed.2d 355 (1989) (mere assertion that the defendant was under the influence of heroin was insufficient to establish need for psychiatric assistance); Volson v. Blackburn, 794 F.2d 173 (5th Cir.1986) (Ake requires allegations supported by a factual showing to sustain a claim for psychiatric assistance).
Clearly, the jurisprudence dictates that the showing must be more detailed than mere assertions; it is equally clear that an indigent defendant would be required to make disclosures about his planned defense in order to make the required showing. Such showings in the presence of the prosecution would deprive an indigent defendant of his right to shield his defense from the premature scrutiny of the prosecution and require indigent defendants to put several constitutional rights in jeopardy. Thus the hearing in which the showing is to be made must be ex parte and in camera if it is to be consistent with the Ake requirements.[3]
It is a given that an indigent defendant has a right to expert assistance at the expense of some governing authority, and that the state's right to pre-trial discovery of defendant's case is limited, thus a determination must be made as to how the right to seek funds for expert assistance is to be implemented in this state. It is also axiomatic that a prerequisite to obtaining funds for expert assistance is the showing of a need for such assistance. However, need must be established without violating the pre-trial sanctity of a defendant's case. In concluding that a trial judge may properly decide that proceedings need not be ex parte, the majority reverses a line of jurisprudence indicating that such proceedings must be ex parte, without clearly establishing what circumstances and constitutional requirements have changed since this court decided State v. Langlois, 605 So.2d 1155 (La.1992); State v. Benoit, 576 So.2d 41 (La.1991); State v. Larson, 548 So.2d 945 (La.1989); State v. Madison, 345 So.2d 485 (La.1977).
*1226 As acknowledged by the majority, there is no uniformity among other jurisdictions regarding the actual procedure followed to determine an indigent defendant's need for expert assistance. California, Kansas, Minnesota, Nevada, New York and Tennessee have enacted statutory provisions requiring ex parte proceedings[4]. These state statutes address with varying degrees of specificity the confidentiality requirements for handling requests for funds. For example, New York simply provides for an ex parte proceeding to determine need, while the California statute provides for confidential applications decided by a judge not presiding over the case, in in camera hearings. In those jurisdictions where there is no statutory mandate requiring ex parte proceedings, courts of last resort have mandated ex parte proceedings. See Brooks v. State, 259 Ga. 562, 385 S.E.2d 81 (1989), cert. denied, 494 U.S. 1018, 110 S.Ct. 1323, 108 L.Ed.2d 498 (1990); Arnold v. Higg, 61 Haw. 203, 600 P.2d 1383 (1979); State v. Ballard, 333 N.C. 515, 428 S.E.2d 178 (1993). Lower courts in several states have indicated that an indigent defendant's threshold showing of need proceed ex parte. Wall v. State, 289 Ark. 570, 715 S.W.2d 208 (1986); Clark v. State, 467 So.2d 699 (Fla. 1985); People v. Loyer, 169 Mich.App. 105, 425 N.W.2d 714 (1988), appeal denied, 432 Mich. 900, 438 N.W.2d 248 (1989); Washington v. State, 800 P.2d 252 (Okla.Crim.App. 1990); State v. Newcomer, 48 Wash.App. 83, 737 P.2d 1285 (1987), review denied, 109 Wash.2d 1014 (1987). Still other jurisdictions, however, provide for contradictory rather than ex parte hearings. Iowa provides for contradictory hearings, despite having adopted federal jurisprudence and standards governing indigent defendant applications for expert services. Although Georgia provides for ex parte hearings, the prosecution may file a brief in opposition to a defendant's application, thus, the state has notice of defendant's application and may inadvertently gain knowledge of the contents of that application.[5]
In view of the due process and fairness guarantees of the Fourteenth Amendment to the U.S. Constitution, Article I, § 16 of the Louisiana Constitution and jurisprudence limiting prosecutorial discovery of a defendant's case, requests by indigent defendants for funds for expert assistance must be handled confidentially and privately in an ex parte manner without notice to the prosecution. Thus, in my view, trial courts must protect an indigent defendant's rights through confidential applications and a defendant's threshold showing of need must be protected from premature formal and/or informal disclosure by ex parte, in camera proceedings.
It cannot be overly stated that, both the Louisiana and the federal constitutions unequivocally support the defendant's right to maintain the confidentiality of a defense against any intrusion by the state.

STANDARD FOR DETERMINATION OF NEED
Any standard employed for purposes of determining an indigent defendant's need for expert assistance must implicitly include the factors set forth in Ake. Then, a defendant must show that his or her request is reasonable and show, by setting forth facts that tend to establish that there is a reasonable probability that the expert(s) whose assistance the defendant seeks would aid the defense. Defendant must also show by clear and convincing evidence that a denial of his or her request would result in an unfair trial. U.S. v. Hope, 901 F.2d 1013 (11th Cir.1990), cert. denied, 498 U.S. 1041, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991); Little v. Armontrout, 835 F.2d 1240 (8th Cir.1987); Moore v. Kemp, 809 F.2d 702 (11th Cir.1987); Williams v. Martin, 618 F.2d 1021 (4th Cir. 1980). At least one court has suggested that a defendant's request for expert assistance is reasonable where the attorney would independently *1227 engage the services of such experts for a monied client. People v. Loyer, 169 Mich.App. 105, 425 N.W.2d 714 (1988). We do not deprecate the state's right to protect its coffers against those who would take advantage of the state's guarantees of a secure and undisclosed defense. We must not, on the other hand, trample this constitutionally guaranteed right to effective assistance of counsel.

DUE PROCESS AND PRECONCEPTION
In view of the constitutional mandates on this issue, trial courts should grant a defendant's request where they find that the funds requested will provide a defendant with a means of discovering or developing evidence for use in defense of the charge(s) faced by an indigent defendant.
The trial court should not interfere with the choice of expert made by defendant's counsel. However, the court must not abandon its duty to monitor whether the fields of expertise of those a defendant seeks to retain are likely to provide a means of discovering or developing evidence relevant to defendant's case, based upon the charge(s) and the evidence the prosecution plans to offer at trial. As the court opined in People v. Loyer, supra, the appellate court is confident that trial judges are adequate safeguards against the payment of fees for the frivolous purposes of an indigent defendant. Regrettably, the majority has implicitly concluded that the state's interest in protecting the public fisc is greater than a defendant's need to meaningfully defend his or her life and/or liberty.
The majority offers no suggestions as to how the state or other governing authority can argue that costs are excessive without knowing what work is to be performed or has been performed and the customary costs for such work. Knowledge of this information would permit the prosecution to gain premature knowledge of a defense. Relying on State v. Phillips, 343 So.2d 1047 (La.1977), the majority attempts to justify its conclusions by equating revelations of the reasons for subpoenaing material witnesses with revelations necessary to establish a need for expert assistance. Material witnesses are more frequently known to both sides prior to requests for funds to defray the cost of subpoenas, as indicated in Phillips. In fact, such witnesses are often so well known, as well as their probable testimony, that they may be incarcerated by the state to ensure presence at trial. See Mairena v. Connick, 816 F.2d 1061 (5th Cir.1987), cert. denied, 484 U.S. 1005, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988). In cases involving requests for expert assistance, the prosecution frequently has little or no prior knowledge of the defendant's theories, etc., thus premature disclosure is a danger which is not as likely to arise in material witness cases as in cases involving requests from indigents for expert assistance. The disclosure, if any, in a material witness situation may not result in consequences as severe as those likely to arise due to premature disclosure attendant to a request for funds for expert assistance. Of course, all requests, orders, transcripts, etc. must be kept confidential, thus the application and all records pertaining to the request must be sealed.

COSTS
Given the often bleak fiscal condition of some governing authorities who may be ordered to pay the fees for expert services sought by indigent defendants, it is foreseeable that on occasion they may challenge either the amount of the fees or the necessity for expert assistance. Such challenges must not be mounted by the prosecution. In those parishes where the District Attorney is also the parish attorney, the prosecution must not be permitted to represent the entity objecting to the defendant's request. This scenario would violate the defendant's right to protect his or her defense from premature disclosure. The constitutional guarantees to which an individual defendant is entitled, compel a finding that in parishes where the District Attorney is also the parish attorney, or otherwise represents the parish's governing authority, that governing authority cannot be represented by the District Attorney or his or her assistants who also engage in the private practice of law. Thus, only attorneys having no connection the Office of District Attorney should represent a governing body and/or agency in challenging need or costs.
I am confident that district court judges before whom the matter will not be tried are *1228 competent to adequately determine, consistent with the mandates of constitutionally guaranteed fundamental fairness and equal justice and based upon evidence offered by counsel for an indigent defendant, the necessity for expert assistance in ex parte, in camera proceedings. Likewise, I am confident that these judges can conduct proceedings wherein challenges to a defendant's request are kept confidential and not open to the prosecution.
These are clear principles to be observed. Trial court judges to whom a case has not been assigned for trial, are capable of observing these principles, and are likewise capable of demanding and preserving that quality of justice, without prejudice to the people, the system or the accused.
For the foregoing reasons, I respectfully dissent.
CALOGERO, Chief Justice, concurring.

[Filed September 30, 1994]
I concur with the majority in the result in this case, since the right to a fair trial must include the right to develop, and not just merely to present, a considered defense. I believe, however, that the majority has articulated too strenuous a burden for the defense to meet in establishing its entitlement to expert assistance. The majority states "that the indigent defendant should establish that the expert assistance will be necessary to the construction of an effective defense" before receiving expert assistance at government expense. Majority Opinion, P. 1215 (emphasis added). I find this statement troubling, given that, as the dissenting opinion of Justice Ortique observes, it appears to require a trial judge to pass upon the merits of a defendant's guilt or innocence preliminary to that defendant's trial by jury, a practice which creates a significant, and in my mind unnecessary, risk of prejudice.
The majority opinion posits an additional expression of their "effective defense" test, namely that the indigent defendant "must establish that there exists a reasonable probability both that an expert would be of assistance to the defense and that the denial of expert assistance would result in a fundamentally unfair trial." Majority Opinion, P. 6. This formulation is nearly identical to the standard for post-conviction review of the effectiveness of counsel's assistance enunciated by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and is therefore inapposite to the issue of pretrial violation of Sixth Amendment rights presented in the instant case.
The Strickland opinion created a difficult burden for a criminal defendant to overcome in demonstrating a violation of his Sixth Amendment right to effective assistance of counsel. The opinion expressly noted that the harshness of this standard was due to a number of countervailing policies, namely the importance of the finality of criminal convictions, the avoidance of extensive post-trial burdens that would discourage counsel from accepting indigent defendants, and a concern for the independence of counsel. Strickland, supra, at 690, 104 S.Ct. at 2084. In the pretrial context, however, where these countervailing policies do not come into play, errors of constitutional dimension may be remedied even though such error might be found "harmless" in post-conviction review. See Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); State v. Peart, 621 So.2d 780 (La.1993).
The majority in this case relied upon Moore v. Kemp, 809 F.2d 702 (11th Cir.1987) (En Banc), in formulating the "reasonable probability" Strickland standard noted above. Majority Opinion, P. 1216. In Luckey v. Harris, 860 F.2d 1012 (11th Cir.1988), however, the same federal circuit that had decided Moore had this to say:
The sixth amendment protects rights that do not affect the outcome of a trial. Thus, deficiencies that do not meet the `ineffectiveness' standard may nonetheless violate a defendant's rights under the sixth amendment. In the post-trial context, such errors may be deemed harmless because they did not affect the outcome of the trial. Whether an accused has been prejudiced by the denial of a right is an issue that relates to reliefwhether the defendant is entitled to have his or her conviction overturnedrather than to the *1229 question of whether such a right exists and can be protected prospectively. Luckey, supra, at 1017. After reviewing the policies mandating the harsh standard in Strickland, the Luckey court declared that "[t]hese considerations do not apply where only prospective relief is sought." Id. The Luckey court concluded by finding that in a suit for prospective, as opposed to post-conviction, relief, it is only necessary that the indigent defendant demonstrate a likelihood that his Sixth Amendment rights will be impaired before a court may prescribe an appropriate remedy to obviate the impending constitutional violation. Id.[1]
In Ake v. Oklahoma, which the majority properly recognizes to be the wellspring of an indigent criminal defendant's (limited) constitutional entitlement to expert assistance, the Supreme Court set forth the following:
The risk of error from denial of such assistance, as well as its probable value, is most predictably at its height when the defendant's mental condition is seriously in question. When the defendant is able to make an ex parte threshold showing to the trial court that his sanity is likely to be a significant factor in his defense, the need for the assistance of a psychiatrist is readily apparent. It is in such cases that a defense may be devastated by the absence of a psychiatric examination and testimony; with such assistance, the defendant might have a reasonable chance of success. In such a circumstance, where the potential accuracy of the jury's determination is so dramatically enhanced, and where the interests of the individual and the State in an accurate proceeding are substantial, the State's interest in its fisc must yield. Ake v. Oklahoma, 470 U.S. 68, 82-82, 105 S.Ct. 1087, 1096, 84 L.Ed.2d 53 (1985) (emphasis added). This expression of the applicable standard requires only that the defendant demonstrate that the desired expert assistance be a "significant factor in his defense," and that with such assistance he or she will enjoy a "reasonable chance of success," not the guarantee of an "effective" defense as suggested by the majority.
For the reasons stated above, I favor the approach announced by the United States Supreme Court in Ake. It may well be that the majority opinion is not discordant with Ake, since near the close of its opinion the majority, in its third and most liberal expression of the applicable standard, states that an indigent defendant is only required to "show that it is more likely than not that the expert assistance will be required to answer a serious issue or question raised by the prosecution's or defense's theory of the case" in order to receive the desired expert assistance. Majority Opinion, P. 1221. However, although I concur with the result in the instant case, I respectfully suggest that the requirement that the defendant show some relationship between the desired assistance and an "effective defense" be read to require the defendant only show that the assistance will aid him in presenting a "plausible" defense, i.e. a defense which has a "reasonable chance of success." In my opinion such an approach is not only constitutionally and jurisprudentially proper, but also may well avoid the problems which inevitably arise when a trial judge is forced to review a criminal defendant's prospects of success on the merits in advance of trial.
I note in concluding that Ake provided solely for an ex parte proceeding, perhaps contemplating that the role of the executive organ of the State would be a ministerial one, i.e., "signing the check." Ake, supra, at 82-82, 105 S.Ct. 1087, 1096 (1985). However, the shifting of the burden of indigent defense onto the State, mandated by Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) and its progeny, has resulted in a greater strain upon the State fisc than perhaps the Supreme Court contemplated. This is particularly true since after Gideon was decided various and sundry changes in the way criminal trials are conducted in this *1230 country have made indigent criminal defense an increasingly demanding and sophisticated concern:
A criminal case used to be a fairly simple affair. The issue usually was a pure question of factdid the defendant commit the crime? Today, with rapidly changing concepts relating to sundry matters, such as confessions, search and seizure, joinder of defendants, right to counsel, etc., the defense of criminal charges consumes far more time than when we came to the bar. To this must be added the impact of the right of the indigent, without cost, to appeal, and to press post-conviction proceedings....
State v. Rush, 46 N.J. 399, 217 A.2d 441, 448-449 (1966) (citations omitted). See also Arnold v. Kemp, 306 Ark. 294, 813 S.W.2d 770, 780-781 (1991); Smith v. State, 118 N.H. 764, 394 A.2d 834, 838 (1978).
For these reasons, I agree with the majority's holding that the State, in its capacity as administrator of the public fisc, is entitled to oppose the application of an indigent defendant for funds for expert assistance where the defendant cannot show a need for secrecy in his ex parte application. I also agree with view of Justice Ortique, however, that where the prosecutorial and fiscal agencies of the State are united in the same person, i.e. the district attorney, an indigent defendant is entitled to question the impartiality and role of the district attorney in the assistance proceedings. After all, such proceedings should not, under the guise of administrative concern, be allowed to digress into an opportunity for the State to enjoy pretrial discovery at the indigent defendant's expense. I merely note that this particular issue is not at this time before the Court, and pretermit its consideration until the day, if ever, that it is put squarely before us.
With the exception of those sentiments set forth herein, I concur in the majority opinion, and I concur in the result therein.
NOTES
[1] Watson, J., not on panel. Rule IV, Part 2. Judge Melvin A. Shortess, Court of Appeal, First Circuit, sitting in place of Justice James L. Dennis.
[2] See Cal.Penal Code § 987.9 (Deering 1985 and Supp.1992); Kan.Stat.Ann. § 22-4508 (1990 and Supp.1991); Minn.Stat. § 611.21 (1991); Nev. Rev.Stat.Ann. § 7.135 (Michie 1991); N.Y. County Law § 722-c (Consol.1992); and Tenn.Code Ann. § 40-14-207(b) (1991).
[3] See, e.g., Wall v. State, 289 Ark. 570, 715 S.W.2d 208 (1986); Clark v. State, 467 So.2d 699 (Fla.1985); Brooks v. State, 259 Ga. 562, 385 S.E.2d 81 (1989); Arnold v. Higg, 61 Haw. 203, 600 P.2d 1383 (1979); Stranger v. State, 545 N.E.2d 1105 (Ind.App. 1st Dist.1989); People v. Loyer, 169 Mich.App. 105, 425 N.W.2d 714 (1988); State v. Ballard, 333 N.C. 515, 428 S.E.2d 178 (1993); and State v. Newcomer, 48 Wash.App. 83, 737 P.2d 1285 (1987).
[4] It is the state's obligation to furnish the necessary funds to pay the cost of experts needed to assist counsel for indigent defendants. This opinion does not purport to deal with the precise source of funds or governmental entities responsible therefor, as did the opinion in Craig, supra. We note that only recently, after the Craig decision was rendered and while this case was pending in this court, the legislature by Act 81 of the 1994 special session amended LSA-R.S. 15:304 and 15:571.11 to relieve parish governments and the Criminal Court Funds of responsibility for the payment of certain indigent defense costs.

We also note that the legislature by Act 38 of the 1994 regular session, the judicial appropriation act, appropriated $5 million with a supplemental appropriation of another $5 million contingent upon revenue estimates "For the expenses of the programs and the operations of the Louisiana Indigent Defender Board to be created by rule of the Louisiana Supreme Court." These appropriations were passed by the legislature in response to a $10 million request supported as necessary for a full-year's program by an interbranch Task Force on Indigent Defense appointed by the Governor and chaired by the Chief Justice of the Supreme Court. The purpose of the appropriations is to supplement existing revenues available to local indigent defender boards through programs administered by a new statewide board to be established initially by rule of the Supreme Court. On July 1, 1994, the Supreme Court adopted Rule XXXI establishing the Louisiana Indigent Defender Board and its various programsthe Capital Program, the Appellate Program, the District Assistance Fund, and the Expert Witness/Testing Fund. The latter programthe Expert Witness/Testing Fundis intended to provide financial assistance to local indigent defender boards to defray in part the costs of needed expert witness fees, specialized testing and other expert services. On July 13, 1994, the LIDB held its organizational meeting at which an emergency interim rule was adopted to provide immediate assistance under the Expert Witness/Testing Fund, pending refinement of that rule later in the year.
We noted in Craig, supra, that, before the court orders funds paid by a governmental entity (in that case the City/Parish government for East Baton Rouge Parish), the defendant must make a showing that funds are not available from the indigent defender board. With the availability of additional funds through the Louisiana Indigent Defender Board, it may be that court-appointed counsel for indigent defendants will be able to secure the needed funds administratively through the indigent defender system without the necessity of seeking funds through the court from other governmental sources. The procedure for allocation of these additional funds is yet to be fully developed, and we do not attempt by this opinion to postulate on the effect the recent changes in the law, the additional appropriation of funds, or rules adopted by the LIDB will have on trial court procedure. However, these developments will need to be considered on remand of this case and in other cases where similar motions are filed. Whether the funds now provided specifically for indigent defense will be adequate remains to be seen.
[1] Note that Madison does not require that the information could only be secured if it will lead to information likely to establish an effective defense. But see majority opinion supra at 1215, requiring that an indigent defendant must establish that expert assistance will contribute to the construction of an effective defense.
[2] The issue of expert assistance at public expense for indigent defendants implicates the equal protection requirements of the Fourteenth Amendment as well. U.S. v. Meriweather, 486 F.2d 498 (5th Cir.1973).
[3] In Ake, the Court, in dicta, indicates that such threshold showings should be ex parte.
[4] See N.Y. County Law § 722-c (McKinney 1992); Cal.Penal Code § 987.9 (Deering 1985 and Supp.1992); Kan.Stat.Ann. § 22-4508 (1990 and Supp.1991); Minn.Stat. § 611.21 (1991); Nev.Rev.Stat.Ann. § 7.135 (Michie 1991); Tenn. Code Ann. § 40-14-207(b) (1991).
[5] See State v. Coker, 412 N.W.2d 589 (Iowa 1987) (state argued that no expert was needed); State v. McGhee, 220 N.W.2d 908 (Iowa 1974) (defense counsel must explain any factors considered in making the application for funds).
[1] I note that Luckey involved a civil suit, a class action filed on behalf of all indigent defendants in Georgia, for injunctive relief. The Eleventh Circuit declared that the traditional standard for the application of equitable relief governed the disposition of the case: "In a suit for prospective relief the plaintiff's burden is to show `the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law.'" Luckey, supra, at 1017 (citations omitted).